**Federal Defenders**
OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza - 16th Floor, Brooklyn, NY, 11201
Tel: (718) 330-1200  Fax: (718) 855-0760

*David E. Patton*
Executive Director and
Attorney-in-Chief

Eastern District
Peter Kirchheimer
Attorney-in-Charge

May 6, 2015

**Via Email, Hand and ECF**
The Honorable I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

    Re:  **United States v. Pui Ng, 12-CR-553 (ILG)**

Your Honor:

    The Probation Department has determined that Ms. Ng's total offense level is 15, resulting in a guideline range of imprisonment of 18 to 24 months in Criminal History Category I. (PSR ¶38, 41, 70.) I write to object to the guidelines calculation, specifically with respect to the enhancements applied pursuant to U.S.S.G. §2B1.1(b)(1)(H) and U.S.S.G. §2B1.1(b)(14)(A).  Absent the above enhancements, Mrs. Ng's correct total offense level is O for which there is no corresponding recommended guidelines range.

I.    **Objection to 14-Level Enhancement for Loss Amount Greater Than $400.000 Per U.S.S.G. §2B1.1(b)(1)(H)**

    For the reasons set forth in counsel for Mr. Ng's sentencing memorandum, we respectfully submit that, because no loss occurred, a sentencing enhancement under Section 2B1.1(b)(1)(H).[1]

---

[1]    Were the Court to determine that the Probation Department correctly applied an enhancement pursuant to U.S.S.G. §2B1.1(b)(1)(H), a significant downward variance would be warranted. Both the Probation Department and the government assessed Ms. Ng's offense conduct and role in the conspiracy and determined that Ms. Ng was a minimal participant in her husband's fraud.  *See*, U.S.S.G. §3B1.2(a);PSR ¶32.  The defendant submits that a minimal role reduction alone does not adequately take into account her minimal participation in the instant offense. Ms. Ng's minimal role reduction would be substantially outweighed by

*See* Letter of Zachary Margulis-Ohnuma dated May 4, 2015.(ECF Doc. No. 97 at 3-5.)

### II. Objection to 2-Level Enhancement For Reckless risk of Death or Serious bodily Injury Per U.S.S.G. §2B1.1(b)(14)(A)

As the defendant has previously submitted to the Court, a 2-point increase in her base offense level per U.S.S.G. §2B1.1(b)(14)(A) is not warranted. *See* Defendant's Sentencing Memorandum (ECF Doc. No 49 at 1-5).[2]

Ms. Ng and her husband pleaded guilty pursuant to an information charging the couple with Conspiracy to Unlawfully Produce Identification Documents in violation of 18 U.S.C. §§1028(b)(2)(A) and (f).  The Court is, by now, well aware of the facts underlying the Ngs' criminal conduct.

The Ngs owned and operated a driving school catering to

---

a 14-point enhancement for total gain in the offense. See, PSR ¶29, U.S.S.G. 2B1.1(b)(1)(H).

Under the principles espoused in *United States v. Restrepo*, 936 F.2d 661 (2d Cir. 1991), a further reduction in sentence would be appropriate.  *See also* 18 U.S.C. § 3553(a)(1) (directing the court to consider the "nature and circumstances of the offense").  Under the pre-*Booker* sentencing regime, this Circuit expressly authorized departures to supplement a limited role adjustment where "an offense level has been extraordinarily magnified by a circumstance that has little relation to the defendant's role in the offense."  *United States v. Restrepo,* 936 F.2d 661, 667 (2d Cir. 1991). However, the Court need not determine that the grounds for a departure are met in order to sentence the defendant below a recommended guideline range. The Supreme Court's decisions in  *Kimbrough v. United States*, 552 U.S. 85(2007) and *Gall v. United States*, 552 U.S. 38(2007), make clear that this Court has full authority to consider <u>any</u> evidence it wants in deciding whether or not the guidelines "properly reflect § 3553 considerations[.]" *Rita v. United States*,  127 S. Ct. 2456,  2468 (2007).

---

[2]  We have attached a copy of defendant's prior sentencing submission, and for the convenience of the Court, defendant's previous arguments regarding the enhancement for reckless risk of death or serious bodily injury are largely recounted here.

2

Chinese immigrants. The fraudulent scheme was designed to assist Chinese speaking students with limited English proficiency ("LEP") cheat on the written portion of the Commercial Driver's License ("CDL") test. The government has never disputed that all of the customers in question passed the CDL road test without cheating.

The Probation Department determined that, through her participation in the conspiracy, Ms. Ng engaged in conduct that recklessly caused a risk of death, or serious bodily injury. PSR ¶30. In order for the 'reckless" prong of §2B1.1(b)(14)(A) to apply, it must be established that "the risk of bodily injury must have been the 'type of risk that is obvious to a reasonable person and for which disregard of said risk represents a gross deviation from what a reasonable person would do.'" *See, United States v. Wolosz,* 485 Fed.Appx. 509, 514(2d cir. 2012) *citing United States v. Lucien*, 347 F.3d 45, 56-57 (2d Cir.2003).

Before reaching a determination as to whether Ms. Ng disregarded a risk that was "obvious to a reasonable person" and/or wether a disregard of such a risk represented a "gross deviation" from reasonable behavior, the Court must first determine whether a risk of death or serious bodily injury existed as a result of the defendants' crime. As stated above, the government has acknowledged that all of the Ngs' customers passed the CDL road test without cheating. Thus, a licensed road test administrator of the DMV observed them to be safe drivers, capable of obeying the necessary traffic rules and regulations.

Additionally, the government and the Department of Probation have conceded that Ms. Ng was a minimal participant in the crime. *See*, U.S.S.G. §3B1.2(a);PSR ¶32. Ms. Ng began working at the driving school to assist her husband in the business. She was responsible for administrative tasks such as scheduling appointments and collecting payment. PSR ¶¶ 6-21 She performed these same administrative functions in assistance with the scheme. *Id*. While Ms. Ng was certainly aware of and profited from her husband's scheme, her interaction with the drivers was limited and she was not intimately aware of the intricacies of the fraud carried out by her husband. Ms. Ng's minimal role should be considered in determining whether the U.S.S.G. §2B1.1(b)(14)(A) 2-point enhancement applies.

### A. No Safety Rationale Exists for CDL Language Requirement

Ms. Ng's knowledge of her clients' inability to speak fluent English did not, in and of itself, alert her to a risk of death or bodily injury. There is nothing inherently dangerous about a

non-English or LEP individual operating a commercial vehicle. No safety rationale exists for the CDL written test language requirement. In fact, such language requirements are recognized to impact language access issues, and New York is moving toward addressing such problems. *See*, M. Bidell, *Language Access Plan for LEP Individuals*, New York State Department of Motor Vehicles, October 5, 2012, ECF Doc. 49, Exhibit B. Unlike the written examination for a standard driver's license, offered in 13 languages including Chinese, the CDL written exam is offered in English and Spanish only. *See*, ECF Doc. No.49, Exhibit B at pp.8-10; See also Complaint and Affidavit in Support of Arrest Warrant, ECF Doc. No,1 ¶3. In assessing the number of LED individuals potentially served by the DMV, the Department of Motor Vehicles estimates that Chinese speakers are second only to Spanish speakers with an estimated population of 167,974. ECF Doc. 49, Exhibit B at p.2. While states create their own testing and licensing procedures, such requirements and procedures are governed by Federal standards. The United States Department of Transportation Federal Motor Carrier Safety Administration governs Commercial Driver's license standards. According to the Commercial Driver's License Standards; requirements and penalties, part 383.133, Subpart H - Testing Methods:

> "(3) Each knowledge test must be valid and reliable so as to ensure that driver applicants possess the knowledge required under §383.111. **The knowledge tests may be administered in written form, verbally, or in automated format and can be administered in a foreign language, provided no interpreter is used in administering the test.**"[3]

Nowhere in any of the CDL regulations does it specify that the tests must be performed in English. Furthermore, New York Governor Andrew Cuomo's Executive Order 26[4], Statewide Language Access Policy, requires state agencies to translate "vital documents" into the top 6 languages used by LEP's (people with Limited English Proficiency). As stated above, Chinese is the 3rd most commonly spoken language in New York after English and Spanish according to Census data. ECF Doc. No. 49,Exhibit B at p.2. Arguably, the CDL written test, which allows immigrants to

---

[3] http://www.fmcsa.dot.gov/rules-regulations/administration/fmcsr/FmcsrGuideDetails.aspx?menukey=383.

[4] http://www.governor.ny.gov/executiveorder/26, established on October 6, 2011 and meant to go into effect October 12, 2012.

seek and maintain gainful employment, would be considered vital. Notwithstanding the above stated argument, the defendant in no way intends to suggest that her conduct or the fraud was somehow justified, but rather to illustrate that the language requirement in and of itself does not raise a safety concern.

B. **The Government has not Established that the Customers Lacked the Underlying Knowledge Tested by the Written CDL, or that the Lack of Knowledge Created a Risk of Death or Serious Bodily Injury**

The government bears the burden of establishing that a sentencing enhancement is warranted. *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992.) In order to establish that the 2-point enhancement for recklessly causing a risk of death or serious bodily injury is merited, the government must first establish that the customers who cheated on the written CDL test not only lacked the language skills necessary to pass the test, but the knowledge as well. While the government has argued that the CDL written test covers a number topics bearing on public safety which are not covered by the road test, it has not established that Ms. Ng was aware, or should have been aware of this discrepancy or consciously disregarded a risk that her clients lacked knowledge regarding these topics rather than merely the language skills necessary to past the written test on these subjects. *See* Letter of Paul Tuchman, ECF Doc. No. 98 at 3.

The causal link between Ms. Ng's role in a fraud designed to assist otherwise DMV qualified CDL drivers in cheating on the written portion of the exam is, at best, tenuously linked to a public safety concern. Ms. Ng's role in fraud is even further removed from a risk of death or serious bodily injury. As argued above and below, regardless of weather the written test required knowledge that directly impacts public safety, it has not been established that the cheating driver's lacked such knowledge rather than merely language proficiency.

Additionally, the Ngs' fraud is not of the sort courts have generally found to be so intertwined with a safety risk as to warrant an enhancement under §2B1.1(b)(14)(A). See, *United States v. Lucien,* 347 F.3d. 45 (2d Cir. 2003.)(sentencing enhancement applicable for "conscious or reckless risk of serious bodily injury" where defendant engaged in health care fraud by staging actual automobile accidents);*United States v. Wolosz*, 485 Fed.Appx 509 (2d. Cir. 2012)(sentencing enhancement for conscious or reckless risk of death or serious bodily injury warranted where defendant, convicted of conspiracy to commit wire fraud, as the organizer or "boss" of a scheme sanctioned underlings to hire

5

someone to beat and hospitalize witnesses.);*United States v. Feldman*, 647 F.3d. 450 (2d. Cir 2011)(Holding district court did not err in finding 2-level enhancement for conscious or reckless risk of death or serious bodily injury where defendant fraudulently offered to secure organ transplants for victims in dire medical circumstances causing such victims to travel to the Phillippines against medical advice, thus, hastening their deaths.); *United States v. Maestas*, 642 F.3d. 2011 (10th cir. 2011)(stealing gold contaminated with plutonium from Los Alamos National Laboratory.)*United States v. Snyder*, 291 F.3d. 1291, 1294-1295 (11 Cir. 2002.)(enhancement warranted for fraud involving false certifications as to effectiveness of a cancer treatment drug.);and *United States v. Laughlin*, 26 F.3d 1523 (10th Cir 1994)(Sentencing enhancement appropriate in medicare fraud involving defendant's performance of unnecessary surgical procedures.)

The Probation Department's reliance on a reported incident of a fatal bus crash is similarly misplaced. See, PSR ¶18. That incident involved a driver who fell asleep at the wheel due to fatigue and in no way can be said to be related to Ms. Ng's fraud. The Probation Department acknowledges that the government has "no specific evidence" that the driver was one of the "cheating customers." *Id*. However, in drawing any connection to the Ngs' fraud, the Presentence Report fails to note the government's previously expressed concerns regarding the driver's credibility.  *See* Letter of Paul Tuchman, dated November 16, 2012, ECF Doc. No. 49, Exhibit D. Thus, as that the accident was the result of the driver's fatigue, any tenuous connection between the driver and Ngs' fraud must be treated with skepticism given the government's expressed concerns regarding the driver's credibility.  Thus, this incident can not be used to justify the 2-level enhancement.  Further, given the highly inflammatory nature of the incident and the lack of any causal connection to the defendant's fraud, we ask that Paragraph 18 be disregarded in its entirety and be stricken from the Presentence Report.

### C. Conclusion

For the above stated reasons, the government has failed to establish that the 2-level enhancement per U.S.S.G. §2B1.1(b)(14)(A)is warranted.

**III. Correct Guidelines Calculation**

Ms. Ng's correct offense level calculation is as follows:

| | |
|---|---|
| Base Offense Level: | 6 |
| Minimal Role: | -4 |
| Acceptance of Responsibility | -2 |
| Total Offense Level | 0 |

Thus, absent the above enhancements, Ms. Ng's correct total offense level is 0, falling below any corresponding recommended guidelines range.

**IV. Reasonable Sentence**

We respectfully submit that in light of the above guidelines calculation, and Ms. Ng's history of years of compliance with Pretrial Supervision warrants a sentence of time served with no supervision to follow.

We ask the Court to consider the factors in 18 U.S.C. § 3553 to arrive at a fair and reasonable sentence. Section 3553(a) requires a sentence that is, "sufficient, but not greater than necessary" to satisfy specific sentencing goals, including just punishment, deterrence of future criminal conduct, correctional treatment, and the prevention of unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(2). Section 3553(a) further directs courts to consider the applicable Sentencing Guidelines, "the nature and circumstances of the offense," and "the history and characteristics" of the defendant. *See* 18 U.S.C. § 3553(a)(1), (3)-(4).

We are aware that Court has reviewed the previous sentencing submissions submitted by the defendants and is well acquainted with the Ngs' personal history. It has been just over one year since Ms. Ng first came before your honor for sentencing. She is now 50 years-old. Her youngest child, Cindy, is now 16. The beautifully written letter, describing the toll this case has taken on her family, is in many ways a testament to the parenting the Ngs. *See* Letter of Zachary Margulis-Ohnuma dated May 4, 2015.(ECF Doc. No. 97, Exhibit B.) From Cindy's letter it is clear that Ms. Ngs' true character is not defined by her conduct

in this case.

Over the past 38 months the Court has had the opportunity to observe Ms. Ng's character first hand. She has shown her respect for the law through her complete compliance with her Pretrial supervision, and the seriousness with which she treats her obligations to the Court. Ms. Ng has also had the opportunity to demonstrate that she is capable of leading a law abiding life. Since, August of 2012, Ms. Ng has been gainfully employed as a sales representative for DBA Quintessential Herbs. Her employer provided a glowing recommendation to Probation and requested leniency from the Court. Ms. Ng has not only demonstrated that she has been rehabilitated but that there is no danger of her committing any crime in the future.

We recognize that the Court must consider the need for just punishment in fashioning the appropriate sentence. We respectfully submit that, in this case, no further punishment is necessary. The Ngs have already forfeited $125,000. Additionally, as the Supreme Court has noted that a term of probation or supervised release is, in and of itself, a form of punishment, as it imposes substantial restrictions on a defendant's liberty. *See Gall v. United States*, 552 U.S. 38, 48-49(2007). As Judge Gleeson noted in *United States v. Zimmerman*, "[i]mprisonment is not the only way we punish." *See United States v. Zimmerman*, 2012 WL 3779387 (E.D.N.Y. 2012); *citing Gall v. United States*, 552 U.S. at 48-49 (2007.) Following that rationale, Pretrial supervision, while certainly preferable to detention, also imposes restrictions on an individual's liberty, and for that reason can satisfy the purpose of punishment. But, perhaps, the most serious form of punishment Ms. Ng has suffered is the shame, fear and uncertainty she has lived with for the more than 3 years since her arrest.

    The defendant respectfully submits that, for all of the above stated reasons, the circumstances in this matter indicate that a sentence of incarceration or further supervision would result in a punishment greater than necessary to achieve the purposes of sentence enunciated in 18 U.S.C. §3553(a)(2).

                                      Respectfully submitted,

                                        /s/

                                      Michelle A. Gelernt
                                      Deputy Attorney-in-Charge
                                      (718) 330-1204

cc:  Clerk of the Court via ECF w/o attachments
     AUSA Paul A. Tuchman, Esq
     USPO Roberta Houlton
     Ms. Pui Ng
     Mr. Zachary Margulis-Ohnuma